UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

AL HOLIFIELD,

      Plaintiff,

   v.                                                    Case No. 18-cv-807-pp

WARDEN DOHMS, CATHY JESS,
JIM SCHWOCHERT, LT. K. JOHNSON,
PEGGY M. ALT, JON E. LITSCHER,
DEPARTMENT OF CORRECTIONS,
DOC APPEAL ADMINISTRATOR,
RONALD MALONE,
COMMITTEE MEMBER DOE,
ADMINISTRATOR DOE, and JOHN DOES,

      Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED
WITHOUT PREPAYMENT OF THE FILING FEE (DKT. NO. 2), DENYING
PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 3), GRANTING
PLAINTIFF'S MOTION TO WAIVE PARTIAL FILING FEE (DKT. NO. 10) AND
SCREENING COMPLAINT**

---

On May 24, 2018, the plaintiff filed a complaint under 42 U.S.C. §1983,
alleging that the defendants violated his constitutional rights by denying him
early release and denying him access to the courts. Dkt. No. 1. He also filed a
motion for leave to proceed without prepayment of the filing fee, dkt. no. 2, a
motion to appoint counsel, dkt. no. 3, and a motion to waive his initial partial
filing fee, dkt. no. 10. This order resolves those motions and screens the
complaint.

## I.  Motion to Proceed without Prepayment of the Filing Fee

The Prison Litigation Reform Act applies to this case because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. That law gives courts discretion to allow prisoners to proceed with their lawsuits without prepaying the $350 filing fee, if they comply with certain requirements. 28 U.S.C. §1915. One of those requirements is that the prisoner pay an initial partial filing fee.

On May 24, 2018, the court received the plaintiff's motion to proceed without prepayment of the filing fee. Dkt. No. 2. On June 6, 2018, the court ordered the plaintiff to pay an initial partial filing fee of $5.43. Dkt. No. 7. The plaintiff since has asked the court to waive the initial partial filing fee, explaining that he has been released from prison, is unemployed, has no assets and is indigent. Dkt. No. 10. Based on this information, the court concludes that the plaintiff doesn't have the money to pay the initial partial filing fee. The court will grant his motion to waive the initial partial filing fee, dkt. no. 10, and his motion to proceed without prepaying the filing fee, dkt. no. 2. Although the plaintiff no longer is incarcerated, he still must pay the $350 filing fee over time, as he is able.

## II.  Motion to Appoint Counsel

The plaintiff has asked the court to appoint him counsel for "limited purposes," although he does not say what those limited purposes are. Dkt.  No. 3 at 1. He states that the case is too complex and difficult for him, because he does not have any formal experience practicing law or any schooling in the law, and he has only limited resources. Id. He says he's tried to find counsel to represent him free of charge but hasn't had any luck; he says he's contacted at

least five lawyers. Id. The plaintiff says he needs help with the "discovery phase" of the case, because he will be released on July 3, 2018.[1] Id. at 2. The plaintiff asserts that counsel will be able to assist him with recording depositions, finding a place to hold those depositions, serving subpoenas, and obtaining documents from the defendants, as well as hiring an investigator and conducting research. Id.

A court has discretion in a civil case to decide whether to recruit a lawyer for someone who cannot afford one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C § 1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). After a plaintiff demonstrates he has made a reasonable attempt to hire counsel on his own, the court will decide "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." Navejar, 718 F.3d at 696 (citing Pruitt v. Mote, 503 F.3d 647, 655 (7th Cir. 2007)). To decide that, the court looks not only at a plaintiff's ability to try his case but also at his ability to perform other "tasks that normally attend litigation," such as "evidence gathering" and "preparing and responding to motions." Id.

The plaintiff did not attach to his motion any documents showing that he has attempted to retain counsel on his own, but the court will take him at his word and find that he has made a reasonable attempt to hire a lawyer on his own. The court will not, however, appoint a lawyer for the plaintiff at this point. The plaintiff's complaint and other communications with the court show that

---

[1] According to the Wisconsin Offender Locator service online, the plaintiff was released to extended supervision on July 3, 2018. See https://offender.doc. state.wi.us/lop/home.do (last visited Sept. 24, 2018).

he can clearly communicate why he believes he is entitled to the relief he seeks. The plaintiff's claim is not as complex as he indicates—he says that the defendants denied him early release, to which he was entitled, and he says that some of the defendants denied him access to the courts to try to challenge that denial. While there *is* a problem with the plaintiff's complaint—as the court will explain below, he has brought unrelated claims against unrelated defendants in the same lawsuit—the court believes that the plaintiff can remedy that problem himself, after reading this decision.

The plaintiff mentions that he'll need help with discovery. Before the case even gets to that point, the plaintiff will need to amend his complaint, and the court will need to screen the amended complaint. If the plaintiff files an amended complaint, and the court concludes that it states cognizable claims, the court will have the complaint served on the appropriate defendants, and they will answer or otherwise respond. Only after the defendants file an answer will the court issue an order setting deadlines for discovery. The plaintiff's concerns about discovery are premature.

Finally, the plaintiff isn't in custody any longer. Unlike plaintiffs who are in custody, the plaintiff can to go to a law library, or a regular library, and spend as much time as he wants preparing papers and doing research. He does not need to worry about prison officials taking his legal papers, or being transferred to another facility, or losing law library time because of segregation.

The court understands that it would be very helpful to the plaintiff to have ae lawyer help him, but "deciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for

these cases.'" <u>Henderson v. Ghosh</u>, 755 F.3d 559, 564 (7th Cir. 2014) (quoting <u>Olson v. Morgan</u>, 750 F.3d 708, 711 (7th Cir. 2014)). That is why the court must analyze each case when determining whether a plaintiff is able to proceed on his own. The court concludes that this plaintiff can handle his case on his own right now, so it will deny his motion without prejudice. If, later in the case, circumstances change, the plaintiff can renew his motion for an appointed lawyer.

## III. Screening of the Complaint

### A. <u>Federal Review Standard</u>

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint, or part of it, if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). It is not necessary for the plaintiff to plead specific facts and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). A complaint that offers mere "labels and conclusions," however, or a "formulaic recitation of the elements of a cause of action will not do." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678

(2009) (quoting <u>Twombly</u>, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id</u>. (citing <u>Twombly</u>, 550 U.S. at 556). The complaint's allegations "must be enough to raise a right to relief above the speculative level." <u>Twombly</u>, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, district courts follow the principles in <u>Twombly</u>, by first "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." <u>Iqbal</u>, 556 U.S. at 679. Legal conclusions must be supported by factual allegations. <u>Id</u>. Second, if there are well-pleaded factual allegations, the court must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Id</u>.

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that 1) someone deprived him of a right secured by the Constitution or laws of the United States; and 2) whoever deprived him of that right was acting under color of state law. <u>Buchanan-Moore v. Cty. of Milwaukee</u>, 570 F.3d 824, 827 (7th Cir. 2009) (citing <u>Kramer v. Vill. of N. Fond du Lac</u>, 384 F.3d 856, 861 (7th Cir. 2004); <u>see also</u> <u>Gomez v. Toledo</u>, 446 U.S. 635, 640 (1980). The court gives a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976)).

"A party asserting a claim . . . may join, as independent or alternate claims, as many claims as [that party] has against an opposing party." Fed. R. Civ. P. 18(a). But under Fed. R. Civ. P. 20(a)(2), a plaintiff can sue more than one defendant in a single lawsuit only if his claims against all the defendants arose out of the same transaction or occurrence and there are questions of law or fact that are common to all the defendants. Read together, these two rules require that "[u]nrelated claims against different defendants belong in different suits . . . to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits . . . that any prisoner may file without prepayment of the required fees." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). The George court explained that "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." George, 507 F.3d at 607.

B.    Factual Allegations

The plaintiff has sued Warden Dohms of the Flambeau Correctional Center; Cathy Jess; Jim Schwochert; K. Johnson; John Doe Department of Corrections (DOC) staff; Peggy M. Alt; Jon E. Litscher; the Department of Corrections; unknown members of the Act 28 Repeal Implementation committee; unknown Department of Corrections appeal administrator of offender classification; Warden Ronald Malone; John Doe administrator; and John Doe Committee members. Dkt. No. 1 at 1.

It helps to understand the plaintiff's claims if one knows the following: Under 2009 Wisconsin Act 28, Wis. Stat. §302.113(2)(b) provided that an inmate sentenced for a Class F to Class I felony that wasn't a violent offense

could earn one day of positive adjustment time (PAT) for every two days during which he did not violate any prison regulation or refuse or neglect to perform any required duties. The statute was in effect between October 1, 2009 and August 3, 2011; 2011 Wisconsin Act 38 did away with PAT. See *The Pendulum Swings: No More Early Release*, Brennan, Michael B., Wisconsin Lawyer Magazine, Vol. 84, No. 9 (September 2011). Although PAT was repealed on August 3, 2011, Wis. Stat. §973.198 provided that even after its repeal, inmates who'd earned PAT time while the statute was in effect could follow a procedure to try to get the credit. Such inmates had to file a petition with the court, and §973.198(3) required the court to act on the petition within sixty days. If the court agreed that the inmate had earned PAT, it could reduce the inmate's sentence "by the amount of time remaining in the term of confinement in prison portion of the sentence, less up to 30 days," and then lengthening the term of extended supervision. §973.198(5).

The current version of Wis. Stat. §302.113 is titled "Release to extended supervision for felony offenders not serving life sentences." Section (9g) of the statute allows inmates serving bifurcated sentences to seek modification of their sentences—and ask for early release—if they are 65 or older and have served at least five years of confinement, 60 years or older and have served at least 10 years of confinement, or have an "extraordinary health condition." The inmate submits a request for such a modification to the program review committee at the institution, and the statute provides procedures for review of such petitions. If the committee concludes that the inmate should receive such an early release, the DOC notifies the court, and the court holds a hearing, at

which it decides whether to grant the request. Under Wis. Stat. §302.113(9h), the inmate can appeal a court's denial of his request for early release.

Wis. Stat. §302.05, "Wisconsin substance abuse program," is often called the "Earned Release Program." Inmates convicted of certain offenses can participate in the program, and judges can designate defendants eligible for the program at sentencing. Wis. Stat. §302.05(a). The statute allows eligible inmates to participate in substance abuse programs; if the inmate successfully completes the program, the DOC is required to notify the sentencing court, and the sentencing court must reduce the inmate's sentence such that he would receive early release. Wis. Stat. §302.05(c).

       1.     *Allegations Relating to Early Release*

The plaintiff asserts that he was sentenced to four years of initial confinement time and four years of extended supervision. Dkt. No. 1 at ¶5. He says that he was eligible for early release after serving two years and eight months of his initial confinement time. Id. The plaintiff does not identify the case in which he was convicted, but the court believes it was State v. Holifield, 2010CF004424 (Milwaukee County Circuit Court); in that case, he received a sentence of four years. The sentencing date was August 1, 2011 (two days before the PAT statute was repealed). The sentencing judge stated that the plaintiff was eligible for the Earned Release Program, but only after he had served three years of his sentence. https://wcca.wicourts.gov.

The plaintiff alleges that in April 2017, while he was incarcerated at the Milwaukee Secure Detention Facility (MSDF), law library personnel, Warden Ronald Malone and Unit Manager Jamison failed to provide him with

information on how to submit a petition to the court to get his PAT. <u>Id.</u> at ¶1. He also alleges that they failed to process his PAT paperwork. <u>Id.</u>

The plaintiff says he then was transferred from MSDF to Flambeau, and "again requested to be processed." <u>Id.</u> He says that on September 15, 2017, he told Jim Schwochert, Jon E. Litscher, Cathy Jess, Wendy Monfils (not a defendant), Patrick Hughs (not a defendant), Jackie Kuhn (not a defendant), Warden Dohms, Peggy M., social worker Wozniack (not a defendant) and other unknown individuals that he was eligible for early release under 2009 Wisconsin Act 28, but that they told him that the act no longer existed and that he needed to contact a lawyer. <u>Id.</u> The plaintiff claims that these individuals "rescinded on positive adjustment time that [he] had earned and was entitled to." <u>Id.</u> He says he believes that they "refus[ed] to process this in order to avoid civil rights violations that will require litigation in federal court." <u>Id.</u> The plaintiff asserts that these individuals "rescinded and took away the 2009 Act 28 law and replaced it with the Act 38 law and then again with C.E.R. (certain early release) which is an ex post facto violation of the plaintiff's constitutional rights." <u>Id.</u> at ¶4. He says that this resulted in the elimination of PAT, which resulted in his being incarcerated for longer than necessary. <u>Id.</u>

The plaintiff alleges that he filed "multiple documents requesting his positive adjustment time" on November 6, 2017. <u>Id.</u> at ¶7. According to the plaintiff, the petitions were rejected under Wis. Stat. §973.198 because Peggy M. Alt failed to forward a CR-282 verification of eligibility showing that he was eligible for PAT. <u>Id.</u> The plaintiff says that instead, Alt had written to the courts on November 14, 2017, stating that the plaintiff was "ineligible for positive

adjustment time because he had served his initial confinement time" and "telling them not to process the petition." Id. at ¶¶7-8.

The plaintiff states that the defendants also denied him access to the courts by "refusing to forward the appropriate documentation to the Circuit Court." Id. at ¶11. He says he filed an inmate complaint about being denied access to the courts, but that K. Johnson denied that complaint on March 12, 2018. Id. at ¶12.

The plaintiff says he later petitioned for "certain earned release" under Wis. Stat. §302.113(9h). Id. at ¶13. That petition was denied by Cathy Jess on February 13, 2018. Id. at ¶14. The plaintiff states that Jess's asserted reason for denying the petition was because his "release at that time would involve an unreasonable risk to the public." Id. The plaintiff claims that Jess denied his petition despite his being approved for "certain earned release" by the social worker, the Flambeau warden and his parole agent, and despite his having a non-violent offense, having no conduct reports at the prison and being housed in a minimum-security prison. Id. at ¶15.

The plaintiff also alleges that the John Doe members of the committee who implemented the repeal of Act 28 violated his constitutional and civil rights. Id. at ¶9.

### 2. *Allegations Regarding Mr. Zimmerman*

Although he does not name him as a defendant, the plaintiff makes allegations against a Mr. Zimmerman, who he says is says is responsible for staffing and placing inmates at Dodge Correctional Institution. Id. at ¶16. He alleges at the time of the staffing process on August 31, 2017, the plaintiff had an active appeal challenging his conviction. Id. The plaintiff alleges that he was

"denied the opportunity to participate in the earned release program when the plaintiff was made eligible by the Circuit Court judge." Id. The plaintiff says he appealed his classification, but an unknown administrator of the review committee denied the appeal on September 15, 2017. Id. at ¶17.

The plaintiff states that Zimmerman also denied him the opportunity to go to a work release center, and to participate in the work release program, in retaliation for the plaintiff having "filed a writ challenging his conviction." Id. at ¶¶18-19. According to the plaintiff, Zimmerman asked him questions about his appeal, like "why are you challenging your conviction when your guilty." Id. at ¶18. He says that Zimmerman denied him the ability to participate in the earned release program. Id. at ¶19. The plaintiff states that Zimmerman "had to do reasonable basis for sending the plaintiff to residential AODA treatment, when in fact it was not court ordered." Id. at ¶21.

Finally, the plaintiff alleges that the John Doe Administrator violated his rights by failing to overturn Zimmerman's decision "and allow the plaintiff to be released earlier or either go to a work release center." Id.

3.   *Retaliation allegations against Warden Dohms and Flambeau Captain*

The plaintiff alleges that Warden Dohms and the captain at Flambeau retaliated against him by "denying [him] legal loans for copies, postage, legal materials, etc." Id. at ¶ 23. He further asserts that they "had the Lexis Nexis computer in the law library shut down for over 30 days during the time the plaintiff wanted to file his complaint and petition for the plaintiff's P.A.T." Id. He asserts that the warden and the captain were "vindictive regarding the

plaintiff petitioning the court, challenging his conviction & revocation proceedings." Id.

The plaintiff seeks compensatory and punitive damages.

C.    Analysis

The plaintiff believes he was entitled to PAT. Dkt. No. 1 at 4. He makes many broad, sweeping claims in his complaint against "the defendants," or "the named defendants," or "the named individuals." Generally, he alleges that "[t]he defendants rescinded on positive adjustment time that the plaintiff had earned and was entitled to," and he says he thinks they did this "to avoid civil rights violations that will require litigation in federal court." Id. at 3. He says that the "named individuals rescinded 2009 Wisconsin Act 28" and replaced it with other statutes, which he claims is an *ex post facto* violation of his rights, and resulted in him spending longer than necessary in custody. Id. at 4. He says that "the named defendants" violated his First Amendment right to access the courts, by refusing to forward his petition to the circuit court. Id. at 6. The court cannot analyze these broad allegations. Under 42 U.S.C. §1983, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). It is not enough for the plaintiff to make sweeping allegations that a bunch of people violated his rights. He must explain, for each person he sues, what that person did to violate his rights, when they did it, where they did it and, if he knows, why they did it.

Turning to the plaintiff's specific allegations against specific individuals: The plaintiff alleges that on April 1, 2017, the "personnel" in the law library at MSDF, including warden Ronald Malone and unit manager Jamison—failed to

13

provide him with information on how to file for PAT, and failed to process paperwork for PAT. Dkt. No. 1 at 2. Of this group, the only person he listed on the first page of the complaint, where the plaintiff was supposed to list the defendants he wanted to sue, was Warden Malone. This appears to be the only claim he makes against Malone, and it sounds like a First Amendment denial-of-access-to-courts claim. See Bridges v. Gilbert, 557 F.3d 541, 553 (7th Cir. 2009). It may also be a due process claim. See Nespor v. O'Brien, 9 Fed. App'x 507, 509 (7th Cir. 2001). But the plaintiff does not explain what, exactly, Malone did. Did the plaintiff give Malone his PAT petition? Did he ask Malone to send his PAT petition to the court? Did Malone tell the plaintiff he would not send the petition, or throw it away? Although the plaintiff's facts are thin, at this early stage the court will allow him to proceed on a First Amendment denial-of-access-to-courts and a due process claim against Malone.

The DOC inmate locator web site shows that on July 7, 2017, the plaintiff was transferred from MSDF to Dodge. https://appsdoc.wi.gov/lop/detail.do. The plaintiff has made allegations against a Mr. Zimmerman, who he says was in charge of classifying inmates when they were admitted to Dodge. The plaintiff has not sued Mr. Zimmerman—at least, he did not name him on the first page of the complaint where he was supposed to list all the defendants—but he says that when Zimmerman staffed him on August 31, 2017, the plaintiff was "denied the opportunity to participate in the Earned Release program." Dkt. No. 1 at ¶16. He doesn't say whether Zimmerman denied him this opportunity, or how Zimmerman did it—he does not even explain how Zimmerman classified him—but the plaintiff says that Zimmerman retaliated against him because the

plaintiff had an appeal actively challenging his conviction. Id. He also says that
Zimmerman denied him the ability to get out on work release, in retaliation for
the plaintiff filing a "writ" challenging his conviction. Id. at ¶18. This sounds
like a First Amendment retaliation claim. See Massey v. Johnson, 457 F.3d 711
(7th Cir. 2006). But it is not related to the plaintiff's claims about people who
denied him the ability to claim PAT credit. It is an unrelated claim against an
unrelated person, in violation of Fed. R. Civ. P. 18 and 20. If the plaintiff wants
to sue Zimmerman, he must do so in a new complaint, in a separate case.

On September 4, 2017, the plaintiff appealed his classification, but an
unknown person (the administrator of the review committee) denied the appeal.
Id. at ¶17. The plaintiff says that this unknown administrator (whom he has
named as a defendant) "failed to overturn Mr. Zimmerman's decision and allow
the plaintiff to be released earlier or either go to a work release center." Id. at
¶ 21. Perhaps this is a due process claim. Even if it is, however, the plaintiff
has not stated a claim against the administrator. To state a claim against the
administrator, the plaintiff would need to show that the administrator was
personally liable for retaliating against him. See, e.g., Colbert v. City of Chi.,
851 F.3d 649, 657 (7th Cir. 2017) (citing Minix v. Canarecci, 597 F.3d 823, 833
(7th Cir. 2010) ("[i]ndividual liability under §1983 . . . requires personal
involvement in the alleged constitutional deprivation"). In addition, "[p]ublic
officials do not have a free-floating obligation to put things to rights," and "no
prisoner is entitled to insist that one employee do another's job." Burks v.
Ramisch, 555 F.3d 592, 595 (7th Cir. 2009). The plaintiff's allegation that the
appeal administrator should have done something to right the alleged wrong of
Zimmerman's retaliation amounts to a claim that the administrator was

responsible for Zimmerman's misconduct. The law does not support such a claim. Id. at 596. The plaintiff has not alleged that the administrator personally retaliated against him. And again, this claim is unrelated to the plaintiff's claims about denial of PAT time; it violates Rules 18 and 20. The court will dismiss the administrator as a defendant.

Oddly, the Department of Correctional inmate locator does not show the plaintiff ever being housed at Flambeau. https://appsdoc.wi.gov/lop/detail.do. That web site reflects that in September 2017, the plaintiff was at Jackson Correctional Institution in Black River Falls, Wisconsin. At any rate, the plaintiff says that on September 15, 2017, after he was transferred to Flambeau, he told Jim Schwochert, Jon E. Litscher (whom he says was the secretary of the DOC, dkt. no. 1 at ¶22), Cathy Jess, Wendy Monfils, Patrick Hughs, Jackie Kuhn, Warden Dohms, Peggy M., social worker Wozniak and other unknown individuals that he was eligible to be released early under 2009 Wisconsin Act 28. Dkt. No. 1 at ¶1. Of these people, the only ones he named on the first page of the complaint, where he was supposed to list the defendants, are Dohms, Jess, Schwochert, Peggy M. (Alt), and Litscher. Id. at 1. The plaintiff says that he "was told"—he doesn't say by whom—that Act 28 no longer exist and that I need to contact an attorney." Id. at ¶1.

This is the only place in which the plaintiff mentions Schwochert, Monfils, Hughs and Kuhn. His only allegation against them is that he told them that he was eligible for early release under 2009 Wisconsin Act 28. He does not name Monfils, Hughs and Kuhn as defendants on the first page of the complaint, and he has not stated a claim against any of these four individuals. The court will dismiss Schwochert as a defendant.

The plaintiff alleges that he told social worker Wozniak that he was eligible for early release, and that she told him she couldn't give him legal advice about the situation. Id. at ¶¶ 1, 2. Again, the plaintiff has not named Wozniak as a defendant, and he does not state a claim against her; telling someone you can't give them legal advice (especially when you are not a lawyer) is not a constitutional violation. The plaintiff claims that Peggy M. Alt (whom he *did* name as a defendant) failed to accept or process the PAT paperwork that he filed on November 6, 2017. Id. at ¶¶ 7, 8. He says that she wrote to the court indicating that he was not eligible for PAT. Id. He says it was Alt's duty to process Wis. Stat. §973.198 PAT petitions and to forward those petitions to the court, but that she wrote the court on November 14, 2017, telling them not to process his petition. Id. He says that Alt refused to process his petition even though the Wisconsin Supreme Court had ruled that 2011 Wisconsin Act 28, which repealed PAT, was unconstitutional, and he cites State *ex rel.* Singh v. Kemper, 371 Wis.2d 127 (Wis. 2016). Dkt. No. 1 at ¶10. This appears to be a First Amendment denial-of-access-to-courts claim, and possibly a due process claim. There is enough here to allow the plaintiff to proceed against Alt.

The plaintiff makes two claims against Warden Dohms. First, he says that she was responsible for making sure that her staff did what they were supposed to (like process paperwork for positive adjustment time). Id. at ¶3. This claim is not sufficient to allow the plaintiff to proceed against Dohms. As the court already has noted, a plaintiff must show that a defendant personally violated his constitutional rights in order to hold that person liable under §1983. A supervisor cannot be held liable under §1983 for the conduct of someone he or she supervises, even if that conduct violated the plaintiff's

constitutional rights, unless the supervisor knew about the unconstitutional conduct and approved it. <u>Chavez v. Ill. State Police</u>, 251 F.3d 612, 651 (7th Cir. 2001).

The plaintiff also alleges that Dohms (along with a captain, whom the plaintiff has not named as a defendant) retaliated against him by denying him legal loans and having the legal research computer shut down in the law library during the time he was trying to put together his PAT petition. Dkt. No. 1 at ¶23. He says that Dohms was retaliating against him because he was challenging his conviction and his revocation proceedings. <u>Id.</u> Although the court suspects that Dohms may not have been personally involved in denying the plaintiff's legal loans or shutting down the computer in the law library, at this early stage, the court will find that the plaintiff has stated sufficient facts to allow him to proceed against Dohms on a First Amendment retaliation claim.

The plaintiff alleges that he told Litscher that he was entitled to early released under 2009 Wisconsin Act 28, and that Litscher was responsible for department employees in his role as Secretary of the DOC. Dkt. No. 1 at ¶¶ 1, 22. This is not enough to sustain a §1983 claim against Litscher, and the court will dismiss him as a defendant.

The plaintiff asserts that he filed an inmate complaint, and that K. Johnson denied the complaint on March 12, 2018. <u>Id.</u> at ¶22 He says that by denying the complaint, Johnson "failed to see that the plaintiff petitions to the court were properly filed with the courts." <u>Id.</u> Although the plaintiff does not say so, the court assumes that the subject of his inmate complaint was the fact that Flambeau staff had not sent his PAT petition to the courts. Regardless, the plaintiff has not stated a claim against K. Johnson, for the same reasons that

he does not state a claim against the administrator who denied his appeal of his inmate classification. The court will dismiss K. Johnson as a defendant.

The plaintiff says that Cathy Jess is the Deputy Secretary of the DOC. Dkt. No. 1 at ¶14. He says that he filed a request for earned release under Wis. Stat. §302.113(9h), the statute that allows prison officials to grant "compassionate release" to elderly or ill inmates. Id. at ¶13. The plaintiff asserts that on February 13, 2018, Jess denied him the opportunity for early release "for inadequate reasons." Id. at ¶14. He says that the social worker and the warden at Flambeau had approved him for early release, and argues that he qualified for it, but that Jess denied him the release because she said "release at this time would involve an unreasonable risk to the public." Id. at ¶15. The court does not know whether the plaintiff can state a claim against Jess—if it was within Jess's discretion to deny release under §302.113(9h), then her denial likely would not constitute a violation of the plaintiff's constitutional rights. Regardless, this claims is unrelated to the plaintiff's claims about denial of PAT credit. This is an unrelated claim against an unrelated defendant, and does not belong in this case.

This leaves the plaintiff's claims that unknown members of the 2009 Wisconsin Act 28 repeal implementation committee and John Doe committee members violated his rights by repealing 2009 Wisconsin Act 28. The plaintiff claims that the repeal constituted an *ex post facto* violation of his rights, because they deprived him of PAT time that he'd earned. Id. at ¶4. He says that the Wisconsin Supreme Court ruled that he could still get the PAT time, if he was charged between October 1, 2009 and August 3, 2011. Id. at ¶6. He argues that the members of the committee that implemented the repeal are liable

because they rescinded his PAT and he had to serve more time than necessary. Id. at ¶¶ 4, 5.

The court understands that this claim involves the plaintiff's belief that he was entitled to PAT. But it is unrelated to his claims that certain prison officials denied him his ability to petition for PAT. This claim involves different defendants; apparently the plaintiff believes that there was a group of people on a committee that was responsible for "implementing" the repeal of 2009 Wisconsin Act 28. The court can't tell if the plaintiff is alleging that this was a committee of the DOC, or a committee of the Wisconsin legislature, or some other group. He appears to be alleging that because the Wisconsin Supreme Court later held that the repeal of 2009 Wisconsin Act 28 violated the *Ex Post Facto* clause, the members of this committee should be liable to him personally for any PAT time he lost as a result. The court has significant doubts about whether the plaintiff has a private right of action to assert his kind of claim, and isn't clear that the committee the plaintiff references even exists. But if the plaintiff wants to pursue a claim of this kind, he will have to do it in a separate case; it is unrelated to his claims against the DOC defendants.

Finally, the plaintiff has sued the Wisconsin DOC. Section 1983 allows plaintiffs to sue any "person" who, acting under color of state law, violated their constitutional rights. The DOC is not a "person." Further, the DOC is an agency of the state of Wisconsin; "[a] state and its agencies are not suable 'persons' within the meaning of section 1983 . . . ." Hamilton v. Miller, Case No. 18-cv-47-pp, 2018 WL 3215610 at *2 (E.D. Wis. Aug. 31, 2018). The court will dismiss the DOC.

## IV.    Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepayment of the filing fee. Dkt. No. 2.

The court **DENIES without prejudice** the plaintiff's motion to appoint counsel. Dkt. No. 3.

The court **GRANTS** the plaintiff's motion to waive the initial partial filing fee. Dkt. No. 10.

The court **ORDERS** that the plaintiff must pay the $350 filing fee as he is able. The plaintiff may pay the fee by coming in person to the clerk's office in Room 362 of the federal courthouse, 517 East Wisconsin Avenue, Milwaukee, Wisconsin between the hours of 8:30 a.m. and 4:30 p.m. or mailing a check, money order or cashier's check made payable to "Clerk, U.S. District Court" to that address. He may pay by credit card over the telephone during regular business hours, by calling 414-297-3417.

The court **ORDERS** that defendants Cathy Jess, Jim Schwochert, K. Johnson, John E. Litscher, Department of Corrections, unknown members of the Act 28 repeal implementation committee, unknown D.O.C. appeal administrator of offender classification, John Doe administrator and John Doe committee members are **DISMISSED** as defendants.

The court **ORDERS** that the plaintiff may proceed on claims against Warden Malone of the Milwaukee Secure Detention Facility, Warden Dohms of the Flambeau Correctional Institution and Peggy M. Alt of the Flambeau Correctional Institution.

The court **ORDERS** that the United States Marshal shall serve a copy of the complaint and this order on the defendants under Fed. R. Civ. P. 4. The

court advises the plaintiff that Congress requires the U.S. Marshals Service to charge for making or attempting service. 28 U.S.C. §1921(a). The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). Although Congress requires the court to order service by the U.S. Marshals Service precisely because indigent plaintiffs do not have the funds to pay filing fees, it has not made any provision for these service fees to be waived by either the court or the U.S. Marshals Service.

The court **ORDERS** that the defendants shall answer or otherwise respond to the complaint within the time allowed by the Federal Rules of Civil Procedure.

The court **ORDERS** that plaintiff shall submit all correspondence and legal material to:

> United States District Court
> Office of the Clerk
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the case.

After the Marshals Service has served the complaint, the defendants' lawyers will file notices of appearance. Once they have done so, the plaintiff must not communicate directly with the defendants; he may communicate only with the defendants' lawyers. The plaintiff should keep a personal copy of every document he files with the court. If the plaintiff's address changes, he must

notify the court immediately; if he doesn't, he may not receive important notices and documents relating to his case. If the plaintiff does not file documents by the deadlines the court sets, the court could dismiss his case for failure to diligently prosecute it.

Dated in Milwaukee, Wisconsin, this 13th day of March, 2019.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**